**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10089 |
| Plaintiff-Appellee, | D.C. No. 2:19-cr-00141-KJM-1 |
| v. | |
| ADAM JUSTIN FULLER, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted February 7, 2022
San Francisco, California

Before: HURWITZ and VANDYKE, Circuit Judges, and ERICKSEN,** District
Judge.

Adam Fuller is charged with violating 18 U.S.C. § 111(a)(1) and (b) by

allegedly striking a federal Court Security Officer at the United States Courthouse

in Sacramento, California. The district court found that Fuller's schizophrenia

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Joan N. Ericksen, United States District Judge for the
District of Minnesota, sitting by designation.

renders him incompetent to stand trial. The court subsequently issued an order authorizing the government to administer medication—against Fuller's will, if necessary—to restore his competency. Fuller appeals that order.

We have jurisdiction to review an order for involuntary medication under the collateral order exception to 28 U.S.C. § 1291. *United States v. Onuoha*, 820 F.3d 1049, 1051 (9th Cir. 2016); *Sell v. United States*, 539 U.S. 166, 176 (2003). The only issue in this appeal is whether the government has shown "*important* governmental interests" in prosecuting this case, as required for an order of involuntary medication to restore trial competency. *Sell*, 539 U.S. at 180. This issue is "primarily a legal question," so we review the district court's order de novo. *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 693 (9th Cir. 2010). We affirm.

Fuller first argues that the district court overstated the importance of the government's interests by misjudging the seriousness of the alleged offense. We use the length of a sentence the defendant likely would face under the federal Sentencing Guidelines as the "starting point" for analyzing whether a crime is sufficiently serious to give rise to important government interests in prosecution, and then consider other relevant factors. *United States v. Hernandez-Vasquez*, 513 F.3d 908, 919 (9th Cir. 2008); *Onuoha*, 820 F.3d at 1055 (observing that relevant considerations include "the specific facts of the alleged crime as well as the

2

defendant's criminal history").[1] The parties agree that the most likely Guidelines range is 30 to 37 months. In *Onuoha*, we held that an alleged offense was sufficiently serious for a strong governmental interest in prosecution even though the likely Guidelines range was only 27 to 33 months. 820 F.3d at 1055. As in that case, the alleged conduct here threatened "the basic human need for security." *Id.* (quoting *Sell*, 539 U.S. at 180). And by prosecuting an assault on a federal employee, the government seeks to protect "the very integrity of our system of government." *See United States v. Gillenwater*, 749 F.3d 1094, 1101 (9th Cir. 2014) (recognizing an important governmental interest in prosecuting threats of violence against federal officials and employees). Although the district court misstated the likely Guidelines range in its written order, it noted the correct range during the hearing, and we agree with its conclusion that the seriousness of the alleged crime supported an important governmental interest in prosecution.

Second, Fuller argues that the government lacks sufficiently important interests in prosecution because, according to Fuller, a conviction has little value where the public already understands that assault is a crime, and where the defendant's indictment has been publicized. We reject this argument. We never

---

[1]     We adopted this approach in 2008, after the Sentencing Guidelines already had become merely advisory. *Hernandez-Vasquez*, 513 F.3d at 919. Despite their advisory nature, we recognized that the likely Guidelines range is the "best available predictor" of the length of a defendant's incarceration—albeit "not, however, the only factor that should be considered." *Id.*

have suggested that the government has an important interest in general deterrence only where the alleged offense is poorly understood. The government maintains an interest in showing that a serious crime "will result *predictably* in conviction and a serious penalty of incarceration." *Onuoha*, 820 F.3d at 1055 (emphasis added). Moreover, the government's interests in securing a conviction extend beyond any general deterrence that an indictment already may have achieved. For example, a conviction and resulting sentence could incapacitate Fuller from assaulting government officers in the future. *See id.* at 1056.

Third, Fuller contends that the length of his pretrial confinement is a special circumstance that erodes the government's interest in continuing to prosecute this case. Where a defendant already has been confined for a significant period of time that would be credited toward any sentence ultimately imposed, this fact "affects, but does not totally undermine, the strength of the need for prosecution." *Sell*, 539 U.S. at 180. Fuller has now been in custody for more than 29 months. If we affirm the district court's order, by the time criminal proceedings resume Fuller will have been in custody for a duration that already falls within the likely Guidelines range. But the government also has an interest in securing a conviction in order to obtain a term of supervised release, which could help prevent Fuller from continuing to assault public employees. *Onuoha*, 820 F.3d at 1056 (noting that the possibility of supervised release preserved governmental interests in

4

prosecution even where the defendant already had served more time than the lower end of the likely Guidelines range); *Gillenwater*, 749 F.3d at 1101–02. Fuller's pretrial custody has not eliminated the government's important interests in prosecuting him.

Fourth, Fuller argues that the district court improperly considered Fuller's possible dangerousness when considering whether involuntary medication was appropriate under *Sell*. We have stressed that district courts should "take care to separate" their analysis of whether involuntary medication is justified to restore trial competency from their analysis of whether involuntary medication is justified to reduce dangerousness. *Hernandez-Vasquez*, 513 F.3d at 919. But here, the district court properly noted that *prosecution*—rather than medication per se— could reduce the chance of a repeat offense related to Fuller's mental disorder, and expressly stated that it considered Fuller's possible general dangerousness irrelevant to the *Sell* analysis.

Fifth, Fuller argues that the district court inadequately considered the possibility that he will face civil commitment if the charges against him are dismissed. Potential civil commitment can reduce the government's interests in prosecution. *Sell*, 539 U.S. at 180. But Fuller never requested an evaluation of his eligibility for civil commitment. The evidence in the record did not support a finding that civil commitment was likely, and in that situation the district court had

no obligation to speculate about the possibility of civil commitment. *See Gillenwater*, 749 F.3d at 1101. The district court correctly concluded that the hypothetical possibility of civil commitment did not diminish the government's interests in prosecution.

We are mindful that orders to involuntarily medicate a defendant in order to attain competency to stand trial are "disfavored" and should be granted "only in rare circumstances." *Ruiz-Gaxiola*, 623 F.3d at 687–88. But the government has established important interests in prosecuting this case, and no special circumstances negate those interests. We affirm the district court's order.

**AFFIRMED.**